IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BDB & SONS MOVING, INC. *et al.*,<br>**Plaintiffs,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| v. | : | **NO. 08-3465** |
| | : | |
| TRANSGUARD INSURANCE<br>COMPANY,<br>**Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                **November 16, 2010**

Before the Court is Defendant Transguard Insurance Company's Motion for Leave to

Amend Answer and Plead Counterclaims [doc. no. 30] and Plaintiffs' Response in Opposition

thereto [doc. no. 32]. For the reasons that follow, Defendant's Motion is granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs BDB & Sons Moving, Inc. (d/b/a Crews 2 Use), Stephen Bruce, Sr., and Bruce

Trucking (collectively "Plaintiffs") brought this action against Defendant Transguard Insurance

Company ("Transguard") for breach of contract, waiver, and bad faith for Transguard's failure to

pay Plaintiffs' insurance claims.[1] Transguard insured BDB & Sons' commercial properties

located at 399 Fleetwood Street ("Fleetwood Property") and 530 Doe Run Road ("Doe Run

---

[1] Compl. ¶¶ 12–24.

The Parties stipulated to dismissal of the bad faith claims on September 9, 2009 [doc. no. 21].

Property") in Chester County, Pennsylvania.[2] On November 22, 2007, a fire broke out at the Fleetwood Property.[3] An investigation by emergency personnel determined the cause was arson.[4] On the same night, one or more individuals were chased from the Doe Run Property, and gasoline was found on the property after their departure.[5] Law enforcement from a number of jurisdictions, including the Chester County District Attorney, the Coatesville City Police Department and the Pennsylvania State Police, subsequently initiated arson investigations.[6] Shortly thereafter on December 14, 2007, James Keller was charged with an arson-related offense associated with the Doe Run Property.[7]

After Plaintiffs filed their insurance claim, on January 9, 2008, Transguard advanced $25,000 to Plaintiffs pursuant to an Advance Payment Agreement executed by the Parties, pending completion of its investigation,[8] but made no subsequent payments under the policy.[9]

---

[2] Id. ¶¶ 5-6; Def.'s Mot. for Leave to Amend Answer and Plead Counterclaims ("Mot. to Amend") ¶6; Pls.' Resp. in Opp'n to Mot. for Leave to Amend Answer ("Pls.' Resp.") at 3 ¶ 6.

[3] Compl. ¶ 9.

It is unclear from the record whether the fire occurred on both November 21 and 22 or only one of those days. Compare Compl. ¶ 9 with Mot. to Amend ¶ 3.

Defendant disputes that BDB operated commercial enterprises at either property at the time of the fire. Ans. ¶¶ 1, 5.

[4] Mot. to Amend ¶ 4; Pls.' Resp. at 3 ¶ 4.

[5] Mot. to Amend ¶ 5; Pls.' Resp. at 3 ¶ 5.

[6] See Mot. to Amend. ¶ 13; Pls.' Resp. at 4 ¶ 14; Mot. to Modify/Defer Case Management Deadlines ("Mot. to Modify") ¶ 5 & Ex. E (Ltr. from Chester County District Attorney to Defendant).

[7] Mot. to Amend. ¶ 12; Pls.' Resp. at 4 ¶ 12.

[8] Mot. to Amend ¶ 9; Pls.' Resp. at 4 ¶ 9.

[9] Compl. ¶ 10.

Plaintiffs' claims here, filed eight months after the Fleetwood Property fire, are based on

Transguard's failure to compensate them for fire-related losses. Transguard's Answer asserted

that the relevance and applicability of the insurance policy, and Plaintiffs' compliance with its

terms was undetermined and in dispute because its investigation was ongoing.[10] Transguard also

pleaded a range of affirmative defenses, including that: (1) coverage was excluded or limited by

the policy; (2) coverage was barred by state laws and regulation; (3) coverage would be void,

voidable or forfeited if the investigations and criminal proceedings produced evidence that

Plaintiffs participated in the arson or submitted fraudulent or illegal insurance claims; and (4) it

would be entitled to a refund of the advance payment if coverage was found inapplicable.[11]

Transguard asserted then,[12] as it has repeatedly throughout this proceeding,[13] that its access to

evidence and key witnesses was impaired by the criminal investigations and public prosecution.

In November 2008, this Court stayed all discovery and motions practice [doc. no. 11], and

extended the stay [doc. nos. 13 & 16] until discovery resumed in June 2009. On February 24,

2009, when the stay was still in place, James Keller pleaded guilty to arson-related charges

resulting from a December 14, 2007 incident at the Doe Run Property.[14] During the plea hearing,

Mr. Keller implicated Plaintiff Stephen Bruce, asserting Mr. Bruce hired him to start the fires at

---

[10] Ans. ¶¶ 7–8, 13–14.

[11] Id. at 5–6.

[12] See, e.g., id. at 6 ("[D]ue to the pending criminal prosecution of arson . . . Defendant has not had, and still does not have, the access to witnesses and evidence . . . necessary for completion of its own investigation.").

[13] E.g., Mot. to Modify, Ex. F (Jt. Reports to Chambers).

[14] Mot. to Amend ¶ 14; Pls.' Resp. at 4 ¶ 14; Mot. to Modify, ¶ 6 & Ex. A (Plea Colloquy Tr.) at 4:7–12.

both the Fleetwood and Doe Run properties.[15] As part of the plea agreement, Mr. Keller agreed

to cooperate with the Commonwealth's ongoing arson investigation and to testify against Mr.

Bruce in any criminal or civil case.[16] Mr. Keller's inculpatory statements regarding Mr. Bruce

were reported in the press,[17] but investigatory materials were unavailable to Transguard.[18] Mr.

Keller's sentencing was postponed pending completion of the criminal investigation.[19]

After this Court reopened civil discovery in 2009, Defendants issued subpoenas to the

Pennsylvania state police, local police departments and the Chester County District Attorney.[20]

The Chester County District Attorney refused, on behalf of several subpoenaed parties, to comply

with the subpoenas.[21] Although some departments released materials, Transguard asserts none

provided substantive information or identified fact witnesses and other information sources.[22] In

response to Transguard's concerns that its lack of access to criminal investigatory materials

hampered civil discovery,[23] this Court extended discovery deadlines several times [doc. nos. 18

& 23], with the final fact discovery and dispositive motions deadline set for June 16, 2010 and

---

[15] Mot. to Amend ¶ 15; Pls.' Resp. at 4 ¶ 15; Mot. to Modify, ¶ 7 & Ex. A at 3:1–24.

[16] Mot. to Modify, ¶ 8 & Ex. A at 3:14–24, 4:1–6; 6:20–24, 7:1–4.

[17] Mot. to Modify, Ex. B.

[18] Mot. to Amend ¶ 15; Pls.' Resp. at 4 ¶ 15.

[19] Mot. to Amend, ¶ 16; Pls.' Resp. at 4, ¶ 16; Mot. to Modify, Ex. F (Joint letter to Rufe, J., June 13, 2009).

[20] Mot. to Modify ¶ 20–21 & Ex. F (Joint letter to Rufe J., Sept. 2, 2009).

[21] Mot. to Modify, ¶¶ 26–27 & Ex. E (Letter from Chester County District Atty to Def., Sept. 22, 2009); Mot. to Amend ¶ 15; Pls.' Resp. at 4 ¶ 15.

[22] Mot. to Modify, ¶ 23 & Ex. F (Joint letter to Rufe J., Oct. 19, 2009).

[23] Mot. to Modify ¶¶ 21–34 & Ex. F (Joint letters to Rufe J., Sept. 2, 2009 & Oct. 14, 2009).

July 16, 2010, respectively [doc. no. 26].

Mr. Keller was eventually sentenced in February 2010, after which investigative files from the criminal matter were turned over.[24] Transguard deposed two key witnesses along with Mr. and Mrs. Bruce in April 2010, and deposed Mr. Keller on June 10, 2010.[25] Transguard filed the pending motion four months later on October 8, 2010, seeking leave to amend its Answer to reflect its findings in discovery and to add contract and fraud counterclaims to: (1) void the contract; and (2) recover the $25,000 advance, plus attorneys' fees and defense costs.

## II.   LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure permits amendment of pleadings with leave of court, and directs that courts "should freely give leave when justice so requires."[26] The Third Circuit instructs courts to grant leave unless amendment is futile or there has been undue delay in amendment; bad faith or dilatory motive by the moving party; prejudice to non-moving parties; or repeated failure to cure deficiency by amendments previously allowed.[27] The liberal right to amend applies equally to complaints and answers.[28] Because futility and failure to cure

---

[24] Mot. to Amend. ¶ 18; Pls.' Resp. at 4 ¶ 18.

[25] Pls.' Resp. ¶ 21 n.1.

[26] Fed. R. Civ. P. 15(a).

[27] Long v. Wilson, 393 F.3d 390, 400 (3d. Cir. 2004) (citing Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)).

While courts include bad faith as a factor, it is rarely invoked as the sole reason for denying amendment and often arises when delay is unexplained or amendment is prejudicial. See, e.g., Nat'l Bank of Wash. v. Pearson, 863 F.2d 322, 328 (4th Cir. 1988) (inferring ill motive when motion to amend was filed 4 years after initial counterclaim without excuse for delay).

[28] Long, 393 F.3d at 400 (citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981)).

by previous amendment are inapplicable here,[29] only the remaining factors are discussed below. Finally, amending to add a compulsory counterclaim weighs in favor of granting leave because unpleaded compulsory counterclaims can be later barred by res judicata.[30]

## A. Prejudice & Undue Delay

Prejudice to the non-moving party is the "touchstone" for Rule 15(a) decisions.[31] Prejudice here refers to *legal* prejudice: where the non-moving party will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely."[32] Thus, prejudice results when a change in tactics or the underlying legal theory of the case makes it more difficult for the opposing party to

---

[29] Here, Transguard has not previously sought and been granted leave to amend its Answer, and the proposed counterclaims are not futile. Futility requires that the amendment be "frivolous, fail[] to state a claim upon which relief can be granted, or 'advance[] a claim or defense that is legally insufficient on its face.'" Le v. City of Wilmington, No. 08-615, 2010 WL 2754253, at *2 (D. Del. July 12, 2010) (quoting Koken v. GPC Int'l, Inc., 443 F. Supp. 2d 631, 634 (D. Del. 2006). Transguard alleges sufficient facts that render its contract and fraud claims plausible. Under Pennsylvania law, which applies in this diversity case, rescission of an insurance contract is a remedy for a claim of "fraud by the insured in obtaining the policy." Clark v. Allstate Ins. Co., No. 10-294, 2010 WL 1904013, at *2 (W.D. Pa. May 7, 2010). A policy is "void ab initio for misrepresentation when the insurer can establish that: '(1) the representation was false; (2) the insured knew it to be false when made or acted in bad faith; and (3) the representation was material to the risk being insured.'" Id. at *3 (quoting Lutheran Bhd. v. Kraynak, 32 F. Appx. 19, at *1 (3d Cir. 2002). Here, Transguard has alleged that Plaintiffs' representations under the policy were "materially false," known to be so, material to the risks under the policy, and has pleaded facts to support those claims.

Moreover, Transguard has alleged sufficient facts to void the coverage based on Plaintiff Bruce's alleged involvement in the arson and the "causes of loss clause" in the insurance policy. See Mem. in Supp. Mot. to Amend at 8 & Ex. D (policy will not cover loss caused by criminal acts). Under Pennsylvania law, where fraud is shown, forfeiture clauses are strictly enforced. Millard v. Shelby Cas. Ins. Co., No. 02-1902, 2005 WL 2035860, at *4 (M.D. Pa. Aug. 24, 2005) (citing Lavin v. Fireman's Ins. Co. of Newark, N.J., No. 91-0114, 1992 WL 157691, at *2 (E.D. Pa. June 29, 1992)).

[30] See Technographics, Inc. v. Mercer Corp., 142 F.R.D. 429, 430–31 (M.D. Pa. 1992).

[31] Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d. Cir. 1984).

[32] Heyl, 663 F.2d at 426.

prosecute or defend the case.[33] Prejudice may occur, for example, where amendment forces the

non-movant to expend "significant additional resources to conduct discovery and prepare for

trial," or "significantly delay[s] . . . resolution of the dispute."[34] Even where new allegations are

asserted in an amendment, if the evidence "required to meet these new allegations is substantially

similar to that which was originally required, prejudice does not exist."[35] To justify denial, the

non-movant's ability to prosecute the action must be seriously impaired,[36] and that party bears the

burden to show impairment.[37]

Delay, standing alone, is an insufficient basis for denying leave to amend.[38] First, delay is

judged by the degree of prejudice it causes.[39] The extent of prejudice that the non-moving party

must demonstrate falls as the length of the unexplained delay grows.[40] Second, delay becomes

"undue" where the moving party fails to provide a colorable excuse for not amending sooner.[41]

---

[33] See Pohl v. EPA, No. 09-1480, 2010 WL 2607476, at *6 (W.D. Pa. June 25, 2010) ("Under Rule 15(a), 'prejudice' means 'undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party.'") (quoting Johnson v. GEICO Cas. Co., 673 F. Supp. 2d 244, 251 (D. Del. 2009) (alteration in original).

[34] See Long, 393 F.3d at 400 (quotations and citation omitted).

[35] Romero, 2010 WL 2996963 at *13 (citation and quotations omitted).

[36] Pohl, 2010 WL 2607476 at *6.

[37] See Heyl, 663 F.2d at 426; Romero v. Allstate Ins. Co., No. 01-3894; 2010 WL 2996963, at *13 (E.D. Pa. July 28, 2010).

[38] Howze, 750 F.2d at 1212 (citation omitted).

[39] See Long, 393 F.3d at 400 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

[40] Long, 393 F.3d at 401.

[41] See Arthur v. Maersk, Inc., 434 F.3d 196, 205 n.11(3d Cir. 2006) (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984); see also Cureton v. Nat'l Collegiate Athletic

Accordingly, the length of delay is rarely dispositive, and courts often find delays of less than one year permissible, although delays as long as four years have also been allowed.[42]

### B. Compulsory Counterclaim

Under Rule 13(a) of the Federal Rules of Civil Procedure:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

The Third Circuit construes the terms "same transaction and occurrence" generously: the issues and facts involved in the counterclaim need not be identical to those in the claim, but instead the counterclaim must bear only a logical relationship to the opposing party's claims.[43] That relationship exists when trying the claims separately would substantially duplicate effort of the courts and parties.[44] Thus "when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties," the claim is compulsory.[45]

## III. DISCUSSION

The dispute over the pending motion centers around when, given the ongoing criminal investigations and the course of discovery, Transguard had sufficient information to bring its

---

Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) ("[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner").

[42] Arthur, 434 F.3d at 204 (finding eleven months was not undue delay and citing cases).

[43] Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (citation omitted).

[44] Id. at 390.

[45] Id. (citing Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir.1978)).

counterclaims and whether and how much prejudice will result from permitting amendment now, after both the discovery and dispositive motions deadlines have passed.

Transguard asserts it could not have brought good faith counterclaims prior to obtaining the investigatory files and deposing the Plaintiffs and other key fact witnesses in this case, including Mr. Keller. According to Transguard, discovery provided sufficient evidence to assert: (1) Plaintiffs allegedly participated in the arson; and (2) at the time Transguard agreed to insure the properties, Plaintiffs allegedly misrepresented that the properties would be used solely as warehouses when in fact they were used as a residential rental unit and auto repair facility.[46] Transguard asserts that the coverage or policy would be void if either were true. Further, Transguard argues that Plaintiffs are not prejudiced by the amendment because: (1) each counterclaim is merely an extension of its original affirmative defenses and thus within the scope of discovery; (2) Plaintiffs have always been aware of the arson and attempted arson at the two properties; (3) all of the counterclaims arise from facts learned during discovery and no additional discovery is required to develop or defend against the claims.[47] Finally, Transguard contends its counterclaim is compulsory and will be later barred if not brought in this action.[48]

Plaintiffs counter that Defendant unduly delayed in moving to amend, waiting nineteen months after Mr. Keller's testimony about Mr. Bruce's involvement, seven months after receipt of the criminal files, six months after the depositions of fact witnesses, four months after Mr.

---

[46] Mot. to Amend ¶¶ 22–29.

[47] Def.'s Mem. in Supp. of Mot. to Amend at 4–6.

[48] Id. at 4–5.

Keller's deposition, and more than two months after the dispositive motions deadline.[49]

Plaintiffs assert the delay since obtaining the criminal files is unexcused.[50] Finally, Plaintiffs

contend they are prejudiced because they were unable to conduct discovery regarding

Defendant's underwriting or claim submission processes, and will be forced to defend "new

claims" after expiration of the discovery and dispositive motions deadlines.[51]

Plaintiffs have not met their burden to demonstrate prejudice and, in fact, devote little

more than a sentence or two to that "touchstone" issue in their responsive papers.[52] First,

Transguard's counterclaims do not represent new claims, but instead merely recast the original

denials and affirmative defenses included in its initial Answer. That Transguard has shifted from

a defensive to an offensive position does not alter the fact that its Answer disputed the

applicability of the coverage on largely or exactly the same basis relied upon in the proposed

Amended Answer. Transguard's initial Answer disputed the relevancy and applicability of the

policy, and Plaintiffs' compliance with its terms; asserted that coverage would be void if

Plaintiffs participated in a conspiracy to commit arson; and made clear that Nationwide would

seek a refund of any payments made if coverage is found inapplicable.[53] The counterclaims thus

represent no change in Transguard's tactics or legal theories, nor would they alter the scope of

discovery. Additionally, Plaintiffs were on notice that both the validity of the underlying policy

---

[49]  Pls.' Resp. at 2, 3 ¶ 21 & n.1, 8.

[50]  Id. at 7 ¶ 35, 9.

[51]  Id. at 7–8 ¶ 41, 9.

[52]  Pls.' Resp. at 9 & ¶ 42.

[53]  Answer at 5–6 & ¶¶ 6–8, 13–14.

and the insurance claim was in question. It should have been apparent from Transguard's

production requests issued last year for all documents between Plaintiffs and their tenants[54] that

Plaintiffs' use of the two properties for both residential living and other purposes beyond

warehouse storage was relevant to Plaintiffs' claims and Transguard's defenses. Because

Plaintiff's compliance with the terms of the policy was plainly in question, Plaintiffs were not

only free to develop the record with respect to the underwriting and claims processes, but they

also had sufficient notice to do so. Moreover, it cannot be argued that Plaintiffs were unaware of

the role arson played in the resolution of their claims. Plaintiffs thus had ample opportunity

during discovery to develop the record with respect to Transguard's contract and fraud

counterclaims. No further discovery should be necessary.

Finally, though Defendant's motion comes after the dispositive motions deadline has

passed, it seems unlikely that Plaintiffs will suffer any resulting impairment. First, during the

this Court's October 13, 2010 status teleconference with counsel, neither party expressed an

intent or desire to file a dispositive motion. Second, Plaintiffs' Response to the Motion to

Amend: (1) admits that the properties were used, at least in part, as Defendants contend; (2)

denies that Plaintiffs misrepresented the uses when they purchased the policy; and (3) asserts that

each of the allegations regarding misrepresentation presents a genuine issue of material fact.[55]

Thus, it is clear that no dispositive motion will be filed based on the counterclaims as Plaintiffs

concede these are all triable issues. Last, given that a trial schedule has not yet been set,

---

[54] Mot. to Extend., Ex. D ¶¶ 25–26 (requesting all documents transmitted between Plaintiffs and tenants).

[55] Pls.' Resp. ¶¶ 23–24.

amendment here should not significantly delay trial progress.

Furthermore, Transguard's delay is excusable. Transguard lacked access to investigatory files and, consequently, suffered a delay in deposing key witnesses. Based on correspondence between the Parties and this Court, as well as other documents, it is clear that Transguard diligently sought the investigatory files from law enforcement and was repeatedly rebuffed.[56] Second, Plaintiffs' argument that Transguard could have filed its counterclaim based solely on press reports that Mr. Keller implicated Mr. Bruce is unavailing. The state and county investigations were not complete when Mr. Keller pleaded guilty in early 2009, and Transguard had no ability to test the credibility of his accusation that Mr. Bruce was involved in the arson without the investigatory findings that developed over the course of the following year or without the depositions of Keller, the Plaintiffs and other key witnesses.

Moreover, Transguard's delay is not significant. Because discovery here was stayed, the earliest possible benchmark for calculating the degree of delay is June 2009, when discovery resumed. Defendant's request herein was delayed at most 16 months. Given that Transguard did not have access to key information necessary to effectively explore, through discovery, Mr. Keller's statements, the dates on which Transguard received the criminal investigation files and deposed the key witnesses are more appropriate benchmarks. Thus, Transguard delayed, at most, between four and seven months—a reasonable period of time to review the evidence and assess the viability of a claim, particularly in light of the lack of prejudice to Plaintiffs.

Finally, the Court is persuaded that the interests of justice are served by granting the

---

[56] See, e.g., Mot. to Modify, Exs. C & E (letters from Chester County District Attorney); F (Jt. reports to Chambers requesting extensions based on inability to access critical files).

motion because Transguard's amendment adds compulsory counterclaims that will be barred if not filed in this litigation. Transguard's counterclaims share common issues of fact and law with Plaintiffs' claims and thus arise from the same transaction or occurrence.[57] Transguard's defenses asserted in its initial Answer mirror its counterclaims in the proposed amendment. And in both cases, the legal questions (e.g., whether the policy or coverage is valid or void) and the fact questions (e.g., whether Plaintiff Bruce solicited arson, what representations Plaintiffs made in the application for coverage, etc.) will be identical. Consequently, if Transguard cannot bring its counterclaims here, it will likely be barred from bringing the claims in a separate suit.

## IV.  CONCLUSION

Because leave to amend should be liberally granted, Plaintiffs have not shown prejudice from amendment, the delay here was of reasonable duration given the adequate justification for it and lack of prejudice to Plaintiffs, and Transguard will likely be barred from asserting its claims in a future action if not asserted here, Transguard's Motion to Amend its Answer and Plead Counterclaims is granted.

An appropriate Order follows.

---

[57] On similar facts, the court in Hanover Fire & Casualty Insurance Co. v. Sieron,, applying Rule 13(a), found that an insurer's claim for fraud and misrepresentation arose from the same transaction and occurrence as the policy holders' claims for breach of contract for non-payment of fire damage claims. No. 06-2758, 2007 WL 120058, at *3 (E.D. Pa. Jan. 9, 2007).